UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANDREW CONWAY, LILIANA CONWAY
d/b/a ZEKE THE ZEBRA,

          Plaintiffs

v.

SAM LICATA a/k/a PHOENIX STONE;
et.al.

          Defendants

Docket No.:
1:13-cv-12193-LTS

## DEFENDANTS' SUBMISSION ON COUNTERCLAIMS

Defendants hereby submit the following argument and evidence on their counterclaims to be decided by the Court.

**1. Quantum Meruit/Unjust Enrichment Counterclaims**

Defendants' counterclaims for unjust enrichment and quantum meruit seek payment of the $25,000 in marketing compensation for the month of September, 2012 that Plaintiffs promised to pay Stonehall, reimbursement of $4,500 that Stonehall paid to Shore Fire Media for September publicity fees on behalf of Liana Conway, and $10,000 for Stonehall's production services of Liana Conway's rendition of the National Anthem.

Recovery under quantum meruit is an obligation created by law and founded on the principle that a party receiving a desired benefit, under circumstances rendering it inequitable to retain the benefit without making compensation, must do so. *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1056-57 (W.D. Tenn. 2009). The basis for awarding quantum meruit damages

is unjust enrichment of one party and unjust detriment to the other party.  *Backman v. Smirnov*, 751 F. Supp. 2d 304, 314 (D. Mass. 2010).  "To satisfy the elements of unjust enrichment, a plaintiff must show: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law."  *Mass. v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005).  *See also Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F. Supp. 2d 785, 805-06 (W.D. Tenn. 1998) (same elements under Tennessee law).

As established at trial, in mid-2011, the parties agreed that Andrew Conway would pay Stonehall $25,000 as Stonehall's monthly compensation for their exclusive services on behalf of Liana Conway.  *See* 5/27/15 Tr. at 118; 6/2/15 Tr. at 165; 6/3/15 Tr. at 67, 70-1, 80-1, 178; 6/4/15 Tr. at 89-90, 100-01.  *See also* Trial Ex. 514; Trial Ex. 491 at ¶14.  There is no substantive evidence of Mr. Conway's version of the agreement that the $25,000 was to be a pass-through to third party vendors each month.  *See* 5/28/15 Tr. at 100, 145, 149-50, 158.  Mr. Conway paid the $25,000 each month from mid 2011 through August 2012, consistent with the parties' agreement.  *See* 5/27/15 Tr. at 119; 5/28/15 Tr. at 58, 98.  Mr. Conway did not pay Stonehall their $25,000 compensation in September, 2012, *see* 6/4/15 Tr. at 116, despite the fact that he did not terminate the business relationship with Stonehall until mid-way through September, 2012, *see* 5/27/15 Tr. at 170-1; Trial Ex. 35.

As set forth in the Affidavit of Sybil Hall, dated June 17, 2015, filed herewith ("Hall Aff."), before Mr. Conway terminated the parties' agreement, Stonehall had performed the following services in September, 2012:  oversaw the radio campaign; coordinated publicity; issued a press release and solicited media stories about Liana and her music; called, met with, and sent CDs of "Free" and "Naïve" to key music executive in the industry in an effort to place

songs in film, TV or commercials; coordinated the entire team for the country radio station tour; pitched Ms. Conway and her music to tastemakers and advertisers; oversaw social media; serviced her music to approximately 600 popular bloggers; and set up interviews.  *See* Hall Aff. at ¶6.  Additionally, Stonehall was required to cancel appearances after Ms. Conway quit the project.  *See* Hall Aff. at ¶7.  Therefore, Mr. Conway received the benefit of Stonehall's services without justly compensating Stonehall.

Additionally, the Conways' testimony was clear that Stonehall was, at the very least, to be reimbursed for all third-party expenses incurred on behalf of Liana Conway's career.  5/27/15 Tr. at 64-65; 5/29/15 Tr. at 51.  As set forth in the Hall Aff., Stonehall incurred $4,500 in expenses paid to Shore Fire Media for September, 2012 services on behalf of Liana Conway.  *See* Hall Aff. at ¶8.  The Conways should reimburse Stonehall for that expense.  There is no justification for Stonehall to bear that cost.

Finally, the record is clear that Plaintiffs never paid Stonehall anything for the production services on Ms. Conway's rendition of the National Anthem that she then used to solicit gigs at Gillette Stadium.  *See* 6/1/15 Tr. at 172.  Stonehall invoiced the discounted rate of $10,000 for those production services and the Plaintiffs never paid that amount.  *See* 6/5/15 Tr. at 24; Hall Aff. at ¶¶9-11; Trial Ex. 1009.

    **2. Violation of  MGL c. 93A Counterclaim**

Defendants, cognizant of the jury's finding of negligent misrepresentation on the part of Plaintiff Andrew Conway, hereby withdraw their counterclaim for violation of MGL c. 93A.  Without more, "mere negligence" does not support a finding of a violation of MGL c. 93A §11.  *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014); *Bryan Corp. v. Chemwerth, Inc.*, No. No. 12-10446-MLW, 2013 WL 6489785, at *4 (D. Mass. Dec. 9, 2013).  "In the

commercial context, neither negligence nor breach of contract/warranty, standing alone, establishes liability under Chapter 93A." *Spiniello Cos. v. Brico Indus., Inc.*, 511 F. Supp. 2d 199, 203 (D. Mass. 2007) (citing *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 400, 788 N.E.2d 522 (2003) (negligence)). Rather, the plaintiff must show negligence "plus," where that "plus" is conduct which, if true, would render the acts "repugnant to the milieu of the commercial marketplace." *Utica Nat'l Ins. Grp. v. BMW of N. Am., LLC*, 45 F. Supp. 3d 157, 161 (D. Mass. 2014). In *Marram v. Kobrick Offshore Fund, Ltd.*, 809 N.E.2d 1017, 1032 (Mass. 2004), the court described the "something more" that is needed for 93A liability as "extreme or egregious" negligence. This showing "is especially difficult where the case involves arm's-length transactions between sophisticated business entities." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 72 F.3d 190, 200 (1st Cir. 1995). That is precisely the case here: the parties were sophisticated and engaged in arm's-length transactions. Indeed, that is why the jury found no fiduciary duties were owed to either party.

Moreover, the First Circuit has also held that "[l]iability under Chapter 93A for conduct amounting to ***intentional*** misrepresentation does not automatically trigger punitive damages. There must be something more." *Damon v. Sun Co.*, 87 F.3d 1467, 1485 (1st Cir. 1996) (emphasis added); *see also Pizzo v. Gambee*, 754 F. Supp. 2d 234, 238 (D. Mass. 2010) (refusing to award multiple damages in §9 case – which has lower standard for plaintiffs than in §11 cases – involving a "he-said-he-said" argument between former friends with very little substantive evidence from either party other than affidavits, each contradicting the other on almost all points). Given that the jury did not find any intentional misrepresentations (or fraud), but only negligent misrepresentations, Defendants also do not believe that the caselaw supports an award of multiple damages under 93A.

4

WHEREFORE, Defendants request that this Court find in their favor on their quantum meruit/unjust enrichment claims and award them $39,500.

Dated:  June 19, 2015                               The Defendants,

By their Attorneys,

**BERMAN DEVALERIO**

*/s/ Glen DeValerio*
Glen DeValerio (BBO #122010)
Daryl DeValerio Andrews (BBO #658523)
One Liberty Square
Boston, MA 02109
Telephone:  (617) 542-8300
Fax:  (617) 542-1194
Email:    gdevalerio@bermandevalerio.com
              dandrews@bermandevalerio.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on June 19, 2015.

Dated:  June 19, 2015

*/s/Glen DeValerio*
Glen DeValerio